IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEM INDIAN COLONY OF POMO INDIANS,<br>         Plaintiff,<br><br>  v.<br><br>PACIFIC DEVELOPMENT PARTNERS X, LLC, et al.,<br>         Defendants.<br>_____/ | No. C 09-1044 CRB<br><br>**ORDER DENYING MOTION TO VACATE OR MODIFY ARBITRAL AWARD** |

      Claimants bring this action to vacate or modify an arbitral award made in favor of Respondent Indian Tribe. The arbitrator found that a purported contract for casino development was void for two independent reasons: (1) lack of regulatory approval, and (2) lack of approval under the Tribe's constitution. The arbitrator's holding is affirmed based on the lack of regulatory authority, and so the issue regarding the Tribe's Constitution need not be reached.

      The award of costs and attorney's fees to the Tribe is similarly affirmed, as it was authorized by the contract in question, and is permissible under California law. The Tribe is also entitled to recover attorney's fees stemming from litigating this motion.

*///*

*///*

## BACKGROUND

Respondent Elem Indian Colony of Pomo Indians (the "Tribe" or "Respondent") is a federally recognized Indian tribe located in Clearlake Oaks, Lake County, California. Compl. ¶ 6. The Tribe has a Constitution and Bylaws ("Elem Const.") that establish the Tribe's government. Id. ¶ 11. The Tribe's General Council is made up of all voting members of the Tribe. Elem Const. art. III § 1. The Constitution also provides for an executive committee, consisting of a Chairman, a Vice-Chairman, a Secretary-Treasurer, and two committee members. Elem Const. art. III § 3.

The Tribe's Constitution grants the General Council the power to "manage, lease, contract, or otherwise deal with tribally owned assets." Elem Const. art. VII § 1(e). The Constitution specifically states that the Executive Committee "shall not commit the Elem Indian Colony to any contract, lease, or other transaction unless it is so authorized in advance by a duly enacted ordinance or resolution of the General Council." Elem Const. art. VII § 2.

In early 2007, Claimant Daniel Kerrigan began discussing a proposed casino project on the Tribe's lands with Tribe Chairman Raymond Brown. Compl. ¶ 14. At that time, Kerrigan was associated with an entity named First Nations Capital, but was transitioning out of his position with First Nations, and developing his own companies: Pacific Development Partners X, LLC ("PDP") and Pacific Tribal Partners, LLC ("PTP") (Kerrigan, PDP, and PTP are, collectively, "Claimants"). Id.  Kerrigan Decl., ¶¶ 1, 5.

At a meeting on July 22, 2007, the Executive Committee authorized Brown "to sign either a letter of intent, MOU/MOA [Memorandum of Understanding / Memorandum of Agreement] with First Nations Capital to exclusively work towards the development of a casino contract." Compl. ¶ 17. At the August 4, 2007 meeting of the General Council, the Executive Committee sought the necessary approval to authorize Brown to sign a contract with First Nations Capital. Id. ¶ 19.

///
///
///

2

On September 4, 2007, former Chairman Brown and Kerrigan executed a Memorandum of Agreement ("MOA") between the Tribe and PDP.[1] Id. ¶¶ 2, 21. At the time, the Tribe was not represented by an attorney in connection with the MOA. Id. ¶ 23. Pursuant to the agreement, PDP then issued a check to the Tribe in the amount of $10,000. Motion, p. 3:12-13. PDP also began preliminary environmental work and hired several Tribe members for the project. Motion, p. 3:14-16.

Over the next six months, the Tribe faced internal power struggles. Id. ¶ 16. On March 22, 2008, the Executive Committee voted to recall Raymond Brown as chairman. Id. ¶ 14. The Executive Committee also voted to terminate the MOA. Id. ¶ 15.

On June 26, 2008, after the contract had been terminated, the Tribe sent a letter to the National Indian Gaming Commission ("NIGC") asking for review of the MOA. Bergin Decl. attach. 11. About nine months later, on April 2, 2009, the NIGC sent a letter with the opinion that the MOA is a management contract which is void without the NIGC Chairman's approval. Bergin Decl., attach. 12; 25 C.F.R. § 533.7. Such approval was never sought nor granted.

The case came before this Court when PDP/PTP sought arbitration to recoup losses; the Tribe sought injunctive and declaratory relief from this Court on grounds that the MOA was void under the Indian Gaming Regulatory Act ("IGRA"; 25 U.S.C. §§ 2701-2721) making the arbitration clause similarly void. Compl. ¶ 53. This Court ordered the parties to submit to arbitration to determine the validity of the MOA. Order Compelling Arbitration, 6/23/09.

The Arbitrator held for the Tribe. Award, p. 11. The MOA was found void and the Claimants were held responsible for the costs of arbitration including attorney's fees. Id. The Tribe was ordered to return the $10,000 previously paid to the Tribe by Claimants. Id. The award was entered "in full settlement of all claims." Id.

---

[1] The disparity between the authorization (for an agreement with First Nations) and the execution (with PDP/PTP) was ruled out as grounds for voiding the contract by the arbitrator under the theory of misnomer because at all times the tribe was working directly with Kerrigan, whether through First Nations or PTP. Award, p. 5.

3

1    On December 24, 2009, the Tribe submitted a Request for Modification of the Arbitral
2 Award, in order to assign a specific dollar value to the award of attorney's fees.  Bergin
3 Supp. Decl., attach. 1, p.1.  After objections from Claimant, the Arbitrator issued a Post-
4 Award Ruling on January 26, 2010 establishing parameters and conditions for the recovery
5 of attorney's fees.  Bergin Decl., attach. 18.  Before the Arbitrator made any rulings vis à vis
6 the actual value of attorney's fees, he resigned due to nonpayment of his retainer.  See Bergin
7 Supp. Decl. ¶ 4 and attach. 2.  Claimants have now brought this action to vacate or modify
8 the Arbitral award.

## STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. §§ 9-11, provides the exclusive grounds for vacatur and modification of arbitration awards.  Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576, 578 (2008).  Review of arbitration awards is "both limited and highly deferential;" an award may be vacated only if it is "'completely irrational' or 'constitutes manifest disregard of the law.'"  Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277, 1288 (9th Cir. 2009).  "Manifest disregard of the law" means that the arbitrator "recognized the applicable law and then ignored it," Comedy Club, 553 F.3d at 1290; the law ignored "must be well defined, explicit, and clearly applicable."  Collins v. D.R. Horton, Inc., 505 F.3d 874, 879-880 (9th Cir, 2007) (quoting Carter v. Health Net of Cal., Inc., 374 F.3d 830, 838 (9th Cir. 2004) (emphasis removed)).  "[T]he 'completely irrational' standard is extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.'"  Comedy Club, 553 F.3d at 1288.  Clearly erroneous findings of fact or contradictory findings of fact do not render a decision completely irrational.  Bosack v. Soward, 586 F.3d 1096, 1106 (9th Cir. 2009).

Neither factual nor legal error are among the enumerated grounds for vacatur.  9 U.S.C. § 10.  This stems from well-developed Ninth Circuit case law: "confirmation is required even in the face of erroneous findings of fact or misinterpretations of law."  Kyocera Corp. v. Prudential-Bache Trade Services, Inc., 341 F.3d 987, 997 (9th Cir. 2003) (en banc).  See also Coutee v. Barrington Capital Group, LP, 336 F.3d 1128, 1133 (9th Cir. 2003).  The

4

Ninth Circuit recognized, though, that federal courts "will not confirm an arbitration award that is legally irreconcilable with the undisputed facts" and that "an arbitrator's failure to recognize undisputed, legally dispositve facts may properly be deemed a manifest disregard for the law." Coutee, 336 F.3d at 1133.

## DISCUSSION

Claimants attack the arbitrator's award on three grounds. First, they claim that the arbitrator exceeded his authority by disregarding one of the stipulated facts, an action Claimants argue is "manifest disregard for the law" under Coutee. Second, Claimants posit that the arbitrator manifestly disregarded the law by not applying estoppel or retroactive ratification here. Finally, Claimants hold that even if the other parts of the award stand, the attorney's fees should be thrown out because the Tribe failed to request them in the arbitration proceedings.

The Tribe counters on several fronts. First, the Tribe contends that the motion was untimely. Next, the Tribe claims that the MOA was found to be void for two independent reasons: first, the MOA was never received regulatory approval as required under the IGRA; second, the MOA was never approved by the Tribe's General Council and thus is void under tribal law. Claimants only counter the second of these two independent arguments, and largely ignore the first. Finally, the Tribe asserts that the award of attorney's fees was not only appropriate, but mandatory under California law.

As noted above, Claimants fail to account for the arbitrator's second independent justification for ruling against them: the contract was void because it did not receive the required regulatory approval. Claimants may be correct that the majority of the arbitrator's opinion focused on the issue of tribal approval, it is not the case that the arbitrator "mentions such issue only in passing." Mot. at 6. The arbitrator wrote that the MOA "should have received NIGC approval before it became operative." Award at 10. There is no getting around this statement. Therefore, the question of whether the arbitrator improperly ignored stipulated facts is immaterial. The arbitrator's ruling on the merits must stand because his determination regarding regulatory approval was not in manifest disregard of the law.

5

1  The final question is whether the arbitrator's award of attorney's fees to the tribe should stand. This Court concludes that the arbitrator's award of fees and costs to the Tribe was proper because the MOA was governed by California law, which permitted such an award, and further concludes that the Tribe is entitled to recoup attorney's fees and costs incurred in defending against this motion in Federal Court for the same reason.

I.  Timeliness of the Motion

Claimants admittedly filed this motion late, apparently due to the attorney's slow wristwatch. Bergin Supp. Decl., p.3:7-10. He thought he had filed it before midnight March 8, 2010, when in fact he filed it at 1:33 AM, March 9. Id. The Tribe now claims that the motion was untimely, exceeding the three month deadline for filing a motion to vacate or modify an award. 9 U.S.C. § 12. The award was emailed to all parties December 7, 2009. The three month deadline was on March 7, 2010, which was a Sunday, thus the deadline was extended to Monday March 8, 2010. It seems that counsel worked feverishly to submit the motion on March 8, but failed.

Claimants now bring several arguments supporting a deadline later than March 8. First, they claim that the statute of limitations was tolled pending resolution of the Tribe's December 24 Request for Modification of Arbitration Award. Second, they claim the statute should be equitably tolled. Third, they argue that the statute did not begin to run until they received mail service, which was sent December 23.

Claimants first cite well-developed caselaw holding that courts should refrain from reviewing an arbitration award until it is final and binding. See, e.g., Kenner v. Dist. Council of Painting and Allied Trades No. 36, 768 F.2d 1115, 1118 (9th Cir. 1985); Reply, p. 7:6-18. The Ninth Circuit in Millmen held that the award was not final when the arbitrator retained jurisdiction over matters undecided on which the parties might not agree. Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373, 1376-77 (9th Cir. 1987). Here, the arbitrator, after the Tribe's Request for Modification, similarly claimed jurisdiction to oversee the calculations of attorney's fees and Claimants' objections to them. Therefore, because the

6

1 arbitration was not truly final as of December 7, the statutory period did not begin until later.

2 Therefore, the motion was timely.

3 Because this Court finds this first argument persuasive, it does not reach the latter two

4 arguments.

II. <u>The MOA was Void Under IGRA</u>

The MOA was null and void because it was in fact a management contract and the Chairman of the NIGC never approved of the agreement. <u>See</u> Award, p. 10. Because of this, we need not reach the independent question of whether the Arbitrator overstepped his authority in also voiding the agreement based on the Tribe's General Council's purported failure to approve of the document before it was executed, as required by the Tribe's Constitution. <u>Id.</u> Because the arbitrator's conclusion that MOA required regulatory approval is not "completely irrational," his decision cannot be set aside.

A. Legal Background

Pursuant to authority granted in 25 U.S.C. § 2702(b)(1), the NIGC has promulgated regulations to implement the provisions of the IGRA. One of these regulations, found at 25 C.F.R. § 533.7 states that "[m]anagement contracts . . . that have not been approved by the Chairman in accordance with the requirements of part 531 of this chapter and this part, are void."

The NIGC has also issued bulletins to provide guidance on issues that may come within the purview of the IGRA.[2] NIGC Bulletin 93-3 states that "if a tribe or contractor is uncertain whether a gaming-related agreement requires the approval of either the NIGC or the BIA, they should submit those agreements to the NIGC." NIGC Bulletin 94-5 gives guidance to Indian tribes and entities that may deal with them regarding what constitutes a management contract, stating:

---

[2] While these bulletins and the later-cited informal opinion letter from the NIGC are not entitled <u>Chevron</u> deference, they may be accepted by the court as persuasive. <u>See</u> First American Kickapoo v. Multimedia Games, 412 F.3d 1166, 1174 (10th Cir. 2005) (citing <u>SUWA v. Dabney</u>, 222 F.3d 819, 828 (10th Cir. 2000); <u>Skidmore v. Swift</u>, 323 U.S. 134, 140 (1944)).

7

> Management encompasses many activities (e.g., planning, organizing, directing, coordinating, and controlling). The performance of any one of such activities with respect to all or part of a gaming operation constitutes management for the purpose of determining whether any contract or agreement for the performance of such activities is a management contract that requires approval.

NIGC Bulletin 94-5 provides further guidance regarding the potential risk of acting pursuant to a management contract that has not been approved by the NIGC Chairman:

> A management contract that has not been approved by the Chairman is void. Furthermore, the management of a gaming operation under a "management" contract or agreement that has not been approved could result in the gaming operation being closed. The consequences to the parties are:
> - The tribe would have to close down the operation or operate it on its own, and
> - The management contractor would have to vacate the operation and could be subjected to legal action to return to the tribe any funds it received under the contract.

B. The Terms of the MOA

The MOA, which refers to PDP as the "Company," states that:

> the Parties unequivocally agree by entering into this MOA to enter into the definitive and legally binding agreements ("definitive agreements") that shall provide the governing details for the relationship between the Tribe and the Company with respect to the planning, financing, development and management of a Casino(s) and related facilities . . . .

See MOA Cl. 5.

The MOA further requires that the Tribe enter into an exclusive management agreement with PDP, which would give PDP the right to manage day-to-day operations at the casino. See MOA Cl. 7; art II §§ 1-2. In exchange for management services over five years, the MOA specifies that the management company shall be paid twenty-five percent of the casino's net gaming revenues. See MOA art. II §§ 3-4. The MOA provides that the Tribe must approve PDP as the manager of the casino prior to execution of a subsequent

1 Development Agreement, but that such approval shall be subject to the finalization of the
2 Management Agreement required by MOA art. II § 1, "and its approval by the NIGC." The
3 MOA also specifies that the agreement shall terminate "[i]n the event that the Company or its
4 designee is not so approved as the manager by the NIGC." See MOA art. III § 4.

     C.    Discussion

The arbitrator's conclusion that the MOA is a "management contract," and is therefore void without approval by the NIGC Chairman, is perfectly reasonable. The Tribe cites in the Complaint to three similar cases where other courts found a contract was null and void because it was not approved by the NIGC Chairman. See First American Kickapoo Operations, LLC v. Multimedia Games, Inc., 412 F.3d 1166 (10th Cir. 2005); United States v. Casino Magic Corp., 293 F.3d 419 (8th Cir. 2002); Machal, Inc. v. Jena Band of Choctaw Indians, 387 F. Supp. 2d 659 (W.D. La. 2005).

Like those contracts, the Tribe's MOA includes many characteristics of a "management contract." The MOA states that PDP "shall exclusively manage the day-to-day operations of the Casino(s)" on the Tribe's lands. The MOA binds the Tribe to entering into a management contract with PDP to manage all such casinos, and forbids the Tribe from operating a gaming operation on its own. The MOA also contains provisions relating to accounting and reporting, the length of the envisioned management relationship, and the compensation based on a percentage of net gaming revenues. The MOA contemplates that the parties will enter into a subsequent agreement to solidify some of the management terms, but the MOA itself binds the Tribe to the management services of PDP. Accordingly, it is a contract that cannot be enforced without approval of the NIGC Chairman.

Although not binding, the NIGC's Acting General Counsel arrived at the same conclusion.[3] See Bergin Decl., attach.12. In response to an inquiry from the Tribe, Ms. Coleman reviewed the MOA. She concluded that "[i]t is clear that the purpose of the Agreement is to bind [PDP] to develop and manage a casino for the Tribe. Moreover, the exclusive right to manage the day-to-day operations of the casino, the compensation under

---

[3] See n.4, *supra*.

the Agreements, the term of years, and hiring of employees are all factors that indicate a management relationship." Id. In closing, Coleman stated: "It is my opinion that the Agreement constitutes a management agreement requiring the approval of the NIGC Chairman." Id.

Claimants do not attempt to refute the Tribe's characterization of the MOA. Rather, they put all of their effort into proving that the Tribe's General Council properly authorized Chairman Brown to execute the MOA. Because the MOA is clearly void for lack of NIGC approval, we need not reach the second issue of whether the General Council authorized execution of the MOA. Lack of NIGC approval is a completely independent ground for voiding the MOA, and the arbitrator's award must therefore be affirmed.

III.   Attorney's Fees

    A.   Attorney's Fees in Arbitration

A federal court may modify or correct an award "[w]here the arbitrators have awarded upon a matter not submitted to them." 9 U.S.C. § 11(b). A court may "strike all or a portion of an award pertaining to an issue not at all subject to arbitration.'" Schoenduve Corp. v. Lucent Techs., Inc., 442 F.3d 727, 732 (9th Cir. 2006) (quoting Kyocera Corp., 341 F.3d at 997-98). In this matter, the MOA authorized an award of attorney's fees to the prevailing party in arbitration. MOA §§ VI ¶ 6e. Throughout the proceedings, Claimants maintained that if they prevailed, they were entitled to attorney's fees and arbitration costs. Claimants' Statement of Demand ¶ 13; Claimants' Closing Arguments. Respondent Tribe did not make that assertion in the arbitration proceedings. Post-Award Ruling, p. 2. Claimants now ask this Court to modify the arbitral award pursuant to 9 U.S.C. § 11(b) so as to remove the award of attorney's fees to the Tribe because they were not an issue submitted to the arbitrator.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, an arbitrator has no inherent authority, aside from contractual or statutory authority, to award attorney's fees. Similarly, under AAA Commercial Arbitration Rule R-43(d)(ii), an arbitrator may not (barring statutory or contractual authority) award attorney fees unless all parties have requested them. The

10

1 FAA and the Arbitration Rule have identical caveats: the arbitrator is barred from awarding
2 attorney's fees if the issue was not submitted, *unless* he has statutory or contractual authority.
3 The MOA itself gives the arbitrator the necessary contractual authority to grant attorney's
4 fees to the prevailing party, and California law confers on the arbitrator statutory authority to
5 award fees even in the face of a finding that the contract is void.[4] Therefore, the award must
6 stand.

California Civil Code § 1717 authorizes the award of contractual attorneys' fees even
8 where that contract has been held to be void. The California Supreme Court explained in
9 Hsu held that "a party is entitled to attorney fees under section 1717 'even when the party
10 prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the
11 other party would have been entitled to attorney's fees had it prevailed.'" Hsu v. Abbara, 9
12 Cal. 4th 863, 870 (1995) (citing Bovard v. American Horse Enterprises, Inc., 201
13 Cal.App.3d 832, 842 (1988)). The underlying policy is to establish parity of remedies in a
14 situation where attorney's fees would otherwise be available to only one party. Hsu, 9 Cal.
15 4th at 870. The Court further explained that such a grant of fees in a dispute over a contract
16 with a fee provision is mandatory, not discretionary. Hsu 9 Cal. 4th at 872, 877. The Ninth
17 Circuit, before Hsu, reached the same conclusion interpreting section 1717. Diamond v.
18 John Martin Co., 753 F.2d 1465, 1467 (9th Cir. 1985) ("Where, as here, a party sued under
19 an alleged contract containing an attorney's fee clause prevails by establishing that there was
20 no such contract, that party is entitled to a section 1717 fee award.").

21 Claimants argue, citing Roy Allen, that the California Civil Code does not apply here
22 because this is not a diversity action. See Roy Allen Slurry Seal v. Laborers Int'l Union, 241
23 F.3d 1142, 1146 (9th Cir. 2001). On the contrary, although this case is not a diversity action,

---

[4] The arbitrator expressly noted that the award of attorney's fees did not stem from the MOA, but "on merit for work performed" "because of their failure to prove their case." Post-Award Ruling, Bergin Decl. attach. 18. Based upon the above-cited authorities, the arbitrator did not have discretion to award fees for that reason. However, the question before this Court is not whether the arbitrator identified the proper legal justification for the award, but rather whether "*any* rational basis exists for the award." Lifecare Intern., Inc. v. CD Med., Inc., 68 F.3d 429 (11th Cir. 1995) (emphasis in original).
The parties agreed that the MOA was to be governed by the laws of California. MOA, § VII, ¶ 3.

11

1 it is an action "on the contract" and the contract in question (the MOA) has a choice of law
2 provision naming California law.  MOA, § VII, ¶ 3.  As in <u>Resolution Trust</u>, where a contract
3 contains an attorney's fees clause and that contract is explicitly governed by California law, a
4 federal court must apply the state law governing attorney's fees.  <u>Resolution Trust Corp. v.
5 Midwest Federal Savings</u>, 36 F.3d 785, 800 (9th Cir. 1993).  Thus, <u>Roy Allen</u>'s restriction
6 against using state attorney's fee law does not apply because this is a contract action
7 explicitly governed by California law.   Like <u>Resolution Trust</u>, the contract at issue here, the
8 MOA, contains an attorney's fee provision and is explicitly governed by California law.  <u>See
9 also</u> <u>Lafarge v. Kaiser Cement</u>, 791 F.2d 1334, 1339, 1341 (9th Cir. 1986) ("The
10 Kaiser-Foley contract provides that Kaiser is entitled to attorney fees in any action to enforce
11 the contract.  The contract also provides that it is to be interpreted in accordance with
12 California law. California Civil Code, section 1717 makes the contract provision for attorney
13 fees applicable to Foley also, if Kaiser's motion constitutes an action 'on the contract'.").

14        So, regardless of how the arbitrator characterized his grant of the fee award, the Tribe
15 was and is entitled to attorney's fees under the <u>Hsu</u> and <u>Diamond</u> interpretations of section
16 1717.  The arbitrator did not manifestly disregard any law here.  Claimant stresses that
17 attorney's fees were not an issue submitted by both parties for arbitration, but it cannot
18 escape the fact that if it had prevailed, Claimant would have a contractual right to attorney's
19 fees through the MOA.  This is just the situation section 1717 was meant to address and both
20 California and the Ninth Circuit are clear that in this type of situation, the Tribe is entitled to
21 recover attorney's fees even though the MOA is void.  The exact value of the fees is an issue
22 for arbitration, not this Court, so the issue of the exact value of attorney's fees for the
23 arbitration must be remanded to arbitration for calculation.

24        B.        Attorney's Fees Stemming from This Motion

25        The Tribe contends that Claimants are also liable for fees incurred in defending
26 against this motion to vacate, in addition to fees from the arbitration.[5]  <u>See, e.g.</u>, <u>LaFarge</u>,

---

[5] The arbitrator held in the Post-Award Ruling (Bergin Decl., attach. 18, p.2) that he had no jurisdiction to make an award of attorney's fees for this district court action.

791 F.2d at 1340-41.  The Arbitration Clause of the MOA states that the prevailing party in arbitration is entitled to attorney's fees not only for the arbitration, but also for "the enforcement of its judgment."  MOA, § VI, ¶ 6e.  Because the controlling law of the MOA is California law, attorney's fees for this action should be governed by section 1717, as they were in Lafarge.  791 F.2d at 1341.  Under Lafarge, the prevailing party in a federal action to enforce an arbitration agreement is entitled to attorney's fees under section 1717.  791 F.2d at 1340-41.  Therefore, the Tribe is entitled to fees.

To conclude, the Court finds that the Tribe is entitled to attorney's fees and other costs stemming from the arbitration proceedings.  The valuation of those fees are REMANDED to arbitration for assessment, as it is the province of the arbitrator to assess the value of the awards granted in arbitration.[6]  Further, the Tribe is entitled to attorney's fees stemming from defending the motion in this Court, pursuant to California Civil Code section 1717 as interpreted in Lafarge.

## CONCLUSION

For the abovementioned reasons, the motion to vacate or modify the arbitral award is DENIED.  The issue of assessment of fees and costs stemming from the arbitration is REMANDED to arbitration.  Further, the Tribe is entitled to recover attorney's fees and costs stemming from this federal action.  The Tribe should therefore submit a proposed order as to that issue in addition to a declaration setting forth sufficient evidence regarding the fees to which it is entitled for opposing this motion.[7]

**IT IS SO ORDERED.**

May , 2010

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[6]  The Tribe has represented to this Court that funds now exist to pay the arbitrator, so presumably there will be no problem securing the services of an arbitrator.

[7]  This Court is also in receipt of Defendants' Motion for Leave to File Motion for Reconsideration.  That motion is moot in light of this written order, and Defendants are advised to resubmit such a motion if it remains appropriate.